CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 1 4 2008

JOHN F. CORCORAN, CLERK
BY: _Bright_
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **ANTHONY BOYD,** | ) | |
| Petitioner, | ) | Civil Action No. 7:08cv00289 |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **TERRY O'BRIEN,** | ) | By: Hon. Glen E. Conrad |
| Respondent. | ) | United States District Judge |

Petitioner Anthony Boyd, Federal Register No. 42603-054, a federal inmate currently in custody at United States Penitentiary Lee ("USP Lee"), in Jonesville, Virginia, filed this pro se action as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges prison disciplinary sanctions he received (i) in September 2004 at the Federal Correctional Institution Three Rivers ("Three Rivers") in Three Rivers, Texas, and (ii) in May 2007 at USP Lee.[1] Petitioner requests relief in the form of expungement of his disciplinary record and the restoration of forfeited good conduct time ("GCT").[2]

---

[1] On September 14, 2004, a Discipline Hearing Officer ("DHO") at Three Rivers found that, on August 28, 2004, petitioner committed the following prohibited acts: threatening another with bodily harm, in violation of Bureau of Prisons ("BOP") offense code 203; assaulting any person, in violation of offense code 224; and insolence towards a staff member, in violation of offense code 312. On May 18, 2007, a DHO at USP Lee found that, on April 1, 2007, petitioner committed the act of insolence in violation offense code 312. The facts stated herein have been adduced from the petition, which petitioner has supplemented with a complete record of his administrative appeals regarding the outcome of each of the disciplinary hearings.

[2] Petitioner seeks the restoration of forfeited good conduct time, thus implicitly challenging the computation of his sentence. Attacks on the execution of a sentence are properly raised in a § 2241 petition. In re Vial, 115 F.3d 1192, 1194 n. 5 (1997) (citing Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996); Hanahan v. Luther, 693 F.2d 629, 632 n. 1 (7th Cir. 1982) (noting that a federal prisoner's challenge to parole revocation proceedings is properly brought under § 2241)). Petitions under § 2241 are often used to challenge some aspect of the execution of an inmate's sentence, rather than the legality of that inmate's confinement itself, and must be filed in the district of confinement, rather than in the sentencing court, and should name as respondent the warden of the prison facility where the inmate is confined. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989). The statute of limitations and other gatekeeping provisions laid out in 28 U.S.C. § 2255 do not apply to petitions brought pursuant to § 2241; however, petitioners are not permitted to circumvent the procedural requirements and gatekeeping mechanisms of §§ 2254 and 2255 merely by labeling a petition as one brought under § 2241. Woodfin v. Angelone, 213 F. Supp.2d 593, 595 (2002) (citing In re Vial,
(continued...)

Upon review of the petition, the court finds that it is without merit and must be dismissed.

## I. THREE RIVERS

On August 28, 2004, while petitioner was incarcerated at Three Rivers, he was the subject of an incident report charging him with "assaulting another person," "threatening another with bodily harm," and "insolence towards staff." The incident report indicates that petitioner received "[a]dvanced written notice of charge," in the form of a copy of the incident report, on August 28, 2004. He was advised of his rights on August 31, 2004, and the DHO hearing was held on September 16, 2004. Petitioner requested a staff representative, who appeared at the hearing, and gave the following statement, which is recorded in the DHO report: "BEING HIS COUNSELOR, WE HAVE WORKED TOGETHER. WE HAVE TALKED ABOUT HIS HISTORY OF THREATENING STAFF. UNIT TEAM HAS NEVER HAD ANY PROBLEMS WITH HIM."

The DHO report indicates that petitioner, who did not request to call witnesses, provided the following statement at the DHO hearing:

> I DIDN'T ASSAULT HIM. HE WAS TWISTING MY ARM. I KICKED THE WINDOW AND THE MEDICAL CART. I SAID, "WHY DON'T YOU TAKE THESE FUCKING CUFFS AND LET'S GO AT IT[,]" AND "I'M GETTING OUT OF HERE IN TWO FUCKING MONTHS ANYWAY THEN WE'LL SEE WHAT THE FUCK IS GOING TO HAPPEN TO YOUR BITCH ASS." I GUESS I COULD HAVE HIT HIM DURING THE STRUGGLE. I DIDN'T DO IT INTENTIONALLY.

---

²(...continued)
115 F.3d at 1194). Nonetheless, "[w]hen . . . § 2255 proves 'inadequate or ineffective to test the legality of . . . detention,' a federal prisoner may seek a writ of habeas corpus pursuant to 28 U.S.C. § 2241." In re Vial, 115 F.3d at 1194.

Documentary evidence was presented in the form of memoranda from security officers who were present at the incident, a one page inmate injury assessment, and three photographs concerning the incident.

The DHO found that the acts had been committed as charged. The DHO report includes a review of the evidence produced at the hearing, which the court quotes, in pertinent part:

THE WRITTEN STATEMENT OF LIEUTENANT WATSON THAT ON AUGUST 28, 2004, AT APPROXIMATELY 5:30 P.M., [petitioner] WAS PLACED IN HAND RESTRAINTS FOR THREATENING THE COMPOUND OFFICER. THE WRITTEN STATEMENT OF LIEUTENANT WATSON THAT AS HE PLACED INMATE BOYD IN HAND RESTRAINTS, HE STATED, "FUCK YOU BITCH SO THIS IS HOW IT IS, I AM GOING TO KICK YOUR FUCKING ASS. SO YOU THINK YOU ARE A BAD MOTHER FUCKER HUH. I WILL KICK YOUR ASS, TAKE THESE RESTRAINTS OFF ME." THE WRITTEN STATEMENT OF LIEUTENANT WATSON THAT INMATE BOYD THEN SHOVED BACK STRIKING HIM WITH HIS SHOULDER. THE WRITTEN STATEMENT OF LIEUTENANT WATSON THAT DURING THE COURSE OF ESCORTING INMATE BOYD TO THE SPECIAL HOUSING UNIT, HE REPEATEDLY RESISTED STAFF EFFORTS TO CONTROL HIM BY LUNGING FORWARD AND LUNGING BACKWARDS AND STRIKING HIM WITH HIS SHOULDER IN HIS CHEST. THE WRITTEN STATEMENT OF LIEUTENANT WATSON THAT HE ALSO LASHED OUT WITH HIS FEET STRIKING A WINDOW BY MEDICAL AND THE MEDICAL CART DURING WHICH HE AGAIN STRUCK HIM WITH HIS SHOULDER.

[Petitioner's] STATEMENT TO INVESTIGATIVE LIEUTENANT GONZALEZ THAT [he] KICKED THE WINDOWS AND THE CART BUT ALL THE REST IS LIES.

[Petitioner's] STATEMENT TO THE UDC THAT IT'S ALL LIES ONLY THE PART ABOUT [him] KICKING THE WINDOWS AND MEDICAL CART IS TRUE.

THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT ON AUGUST 28, 2004, AT APPROXIMATELY 5:30 P.M., WHILE [petitioner] WAS ESCORTED FROM THE LIEUTENANT'S OFFICE TO SPECIAL HOUSING UNIT, HE OBSERVED INMATE BOYD PULLING HIS SHOULDER AWAY FROM LIEUTENANT WATSON AND PUSHING BACK TOWARDS LIEUTENANT WATSON, STRIKING HIM WITH HIS ROWING [sic] SHOULDER INTO

3

LIEUTENANT WATSON'S CHEST AREA. THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT INMATE BOYD STATED TO LIEUTENANT WATSON, "WHAT THE FUCK ARE YOU GOING TO DO ABOUT THAT YOU FUCKIN [sic] BITCH." THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT LIEUTENANT WATSON CONTINUED TO ESCORT LIEUTENANT BOYD TO THE SPECIAL HOUSING UNIT, WHILE ESCORTING THE INMATE PAST THE MEDICAL DEPARTMENT AMBULANCE CART, INMATE BOYD KICKED TO THE REAR, MISSING LIEUTENANT WATSON AND STRIKING THE AMBULANCE CART. THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT INMATE BOYD JUMPED AND KICKED AGAIN AT A WINDOW LOCATED OUTSIDE THE SPECIAL HOUSING UNIT SALLY PORT AREA. THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT AT THIS TIME, HE CALLED FOR CONTROL TO OPEN THE OUTER SHU DOOR FOR STAFF AND ONE INMATE AND INMATE BOYD WERE ESCORTED INTO THE SPECIAL HOUSING UNIT. THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT INSIDE SPECIAL HOUSING, INMATE BOYD STATED TO STAFF, "WHY DON'T YOU TAKE OFF THESE FUCKING CUFFS AND LET'S GO AT IT." THE WRITTEN STATEMENT OF OFFICER SCHMALE THAT INMATE BOYD ALSO STATED, "I'M GETTING THE FUCK OUT OF HERE IN TWO FUCKING MONTHS ANYWAY AND THEN WE'LL SEE WHAT THE FUCK IS GOING TO HAPPEN TO YOUR BITCH ASS."

THE WRITTEN STATEMENT OF OFFICER CHARO THAT WHILE ASSIGNED TAS THE COMPOUND TWO OFFICER ON AUGUST 28, 2004, AT APPROXIMATELY 5:30 P.M., HE AND COMPOUND ONE OFFICER SCHMALE WERE CHECKING ID'S MAKING SURE INMATES WERE GOING THROUGH THE METAL DETECTOR. THE WRITTEN STATEMENT OF OFFICER CHARO THAT AS [petitiner] WALKED THROUGH, THE METAL DETECTOR WENT OFF. OFFICER SCHMALE CALLED [petitioner] BACK AND ASKED THE INMATE TO REMOVE HIS BOOTS AND WALK THROUGH THE METAL DETECTOR AGAIN. THE WRITTEN STATEMENT OF OFFICER CHARO THAT THE INMATE THEN STATED TO OFFICER SCHMALE, "I AIN'T GOT TIME TO FUCKING BE PLAYING GAMES WITH YOUR BITCH ASS, THIS IS FUCKING STUPID, I SHOULD JUST KNOCK YOU THE FUCK OUT." THE WRITTEN STATEMENT OF OFFICER CHARO THAT AT THAT TIME, OFFICER SCHMALE GAVE INMATE BOYD MULTIPLE ORDERS WHICH THE INMATE REFUSED. THE WRITTEN STATEMENT OF OFFICER CHARO THAT AT THAT TIME, THE OPERATIONS LIEUTENANT WAS NOTIFIED AND THE INMATE WAS ESCORTED TO THE LIEUTENANTS [sic] OFFICE WHERE HE WAS CUFFED BY LIEUTENANT WATSON. THE WRITTEN STATEMENT OF OFFICER CHARO THAT INMATE BOYD WAS BEING ESCORTED DOWN TO SPECIAL HOUSING, THE INMATE BECAME VERY AGGRESSIVE AND ASSAULTIVE BY THROWING HIS SHOULDER

4

TOWARDS THE LIEUTENANT AND STRIKING HIM IN THE CHEST. THE
WRITTEN STATEMENT OF OFFICER CHARO THAT AT THAT TIME, THE
INMATE STATED, 'WHAT THE FUCK ARE YOU GOING TO DO ABOUT
THAT YOU FUCKIN [sic] BITCH." THE WRITTEN STATEMENT OF OFFICER
CHARO THAT THE LIEUTENANT CONTINUED TO ESCORT THE INMATE
TO SPECIAL HOUSING AND AS THE INMATE WAS BEING ESCORTED BY
MEDICAL, THE INMATE KICKED HIS LEGS TO THE REAR, MISSING THE
LIEUTENANT AND HITTING THE MEDICAL CART. THE WRITTEN
STATEMENT OF OFFICER CHARO THAT AFTER THAT THE INMATE
JUMPED AND KICKED THE WINDOW OF MEDICAL CLOSEST TO THE
SPECIAL HOUSING ENTRANCE. THE WRITTEN STATEMENT OF OFFICER
CHARO THAT ONCE THE INMATE WAS ESCORTED INTO SPECIAL
HOUSING, THE INMATE CONTINUED TO USE PROFANITY TOWARDS
STAFF.

The DHO report summarizes petitioner's statement at the hearing:

YOU DENIED THE CHARGE AND PRESENTED AS YOUR DEFENSE THAT
YOU DIDN'T ASSAULT THE LIEUTENANT. YOU STATED THAT HE WAS
TWISTING YOUR ARM AND TRYING TO HURT YOU. YOU FURTHER
STATED THAT YOU DID KICK THE WINDOW AND THE MEDICAL CART.
YOU ALSO STATED THAT YOU DID TELL STAFF, "WHY DON'T YOU
TAKE THESE FUCKING CUFFS OFF AND LET'S GO AT IT," AND "I'M
GETTING OUT OF HERE IN TWO FUCKING MONTHS ANYWAY, THEN
WE'LL SEE WHAT THE FUCK IS GOING TO HAPPEN TO YOUR BITCH
ASS." YOU RELAYED THAT YOU COULD HAVE HIT THE LIEUTENANT
WHEN HE WAS TWISTING YOUR HAND CUFFS AND YOU WERE
STRUGGLING BECAUSE HE WAS HURTING YOU, BUT THAT YOU DID
NOT HIT HIM INTENTIONALLY.

The DHO noted that petitioner's admissions "corroborate[] the eye witness [sic] statements,"

and added:

THE DHO ALSO NOTES THAT YOU HAVE A PAST HISTORY OF MAKING
THREATS TO STAFF, REFUSING TO COMPLY WITH ORDERS, AND BEING
DISRUPTIVE. IT IS ALSO CLEAR FROM YOUR ADMISSION THAT YOU DID
STRIKE LIEUTENANT WATSON, WHETHER INTENTIONAL OR NOT,
WHICH IS STILL CONSIDERED ASSAULT ON STAFF. YOU HAVE
PROVIDED NO EVIDENCE OR WITNESSES TO DISPUTE THE CHARGES.
THE DHO GIVES GREATER WEIGHT TO THE REPORTING STAFF
MEMBER'S WRITTEN STATEMENT THAT YOU WERE INSOLENT,
THREATENED STAFF, AND ASSAULTED THE LIEUTENANT BY HITTING

5

HIM IN THE CHEST WITH YOUR SHOULDER, WHICH IS CORROBORATED BY YOUR ADMISSION THAT YOU WERE INSOLENT, THREATENED STAFF, AND YOUR ADMISSION THAT YOU MAY HAVE HIT THE LIEUTENANT DURING A STRUGGLE. THIS FACT IS FURTHER CORROBORATED BY THE EYE WITNESS [sic] ACCOUNTS. . . .

Based on this evidence, the DHO found that petitioner had committed the following prohibited acts: assault (offense code 224); threatening another with bodily harm (offense code 203); and insolence (offense code 312). Petitioner was sanctioned with disciplinary segregation, the disallowance of good conduct time, the forfeiture of good conduct time, and the loss of telephone and commissary privileges. The DHO signed and dated the report on October 6, 2004. On March 7, 2005, the DHO report was delivered to petitioner.

On April 7, 2005, petitioner lodged a regional administrative remedy appeal, arguing that, in the interim between the disciplinary hearing on September 16, 2004, and the delivery of the final DHO report on March 7, 2005, the incident had been "referred to the F.B.I.," that he had been "indicted under Title 18 U.S.C. [§] 111" for "[a]ssaulting a Federal officer," had gone to trial, and had been acquitted on February 16, 2005. In petitioner's view, his acquittal on criminal charges negated the outcome of the disciplinary hearing. On May 27, 2005, the Regional Director denied petitioner's appeal, stating, in pertinent part:

The record of this disciplinary action reflects you were advised of your rights and afforded the opportunity to exercise those rights in accordance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. After thorough review of the incident report, the investigation, the evidence and related documentation, there appears to be sufficient evidence presented to support the DHO's decision. The sanctions imposed are within policy and commensurate with the finding you committed prohibited acts in the High and Moderate severity categories.

This incident involved the DHO finding you threatened bodily harm, assaulted a staff member, and were insolent to staff as they placed hand restraints upon you. As you

6

were being escorted to SHU, you lunged forward and back using your shoulder to strike the reporting officer. Throughout the incident you made threatening remarks to the reporting officer. The DHO took into account your statement in making the determination the greater weight of the evidence supported you committed the prohibited acts.

You contend that this incident was tried in Federal Court and you were acquitted of the charges. However, the DHO had sufficient evidence to find that you committed the prohibited acts.

Petitioner appealed to the denial to the final level of appeal. On August 18, 2005, the National Inmate Appeals Administrator denied his appeal, stating, in relevant part:

[Y]ou contend you were acquitted of criminal charges related to this incident. You state the DHO hearing violated your Constitutional rights. You request expungement of the incident report.

Our review of your disciplinary proceedings indicates substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. The DHO's decision was based upon the greater weight of the evidence as detailed in . . . the DHO report. We find it reasonable for the DHO to have made this determination. Records indicate you appeared before the DHO, were advised of your rights, and made a statement. The DHO gave greater weight of the evidence to the reporting officer's account of the incident. Although you dispute the charge, the evidence is sufficient to support the finding.

The results of a criminal prosecution have no bearing on the inmate discipline process. These are two completely separate and distinct jurisdictions for which different evidentiary standards apply. You were afforded all Due Process rights associated with the inmate discipline process.

Now, more than two and one-half years after the denial of his appeal by the National Appeals Administrator, petitioner appeals to this court, arguing that his due process rights were violated. The claim fails.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court found that inmates subject to disciplinary hearings where they may lose good time credits are entitled to the following due process guarantees: (1) advanced written notice of the claimed violation; (2) disclosure of evidence

7

against the defender; (3) the right to confront and cross-examine witnesses (unless the hearing officer finds good cause not to allow confrontation); (4) a neutral detached hearing body; and (5) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. Id. at 564-71.

Petitioner does not argue that the DHO failed to satisfy the guarantees mandated by Wolff, and petitioner's own submissions indicate that he received advanced written notice of the claimed violation, disclosure of the evidence against him, and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. Id. Petitioner does not express any challenge to the neutrality or detachment of the hearing body, nor does he allege that he was not allowed to cross-examine witnesses at the hearing. Id. Significantly, his own submissions indicate that he was permitted to make a statement at the disciplinary hearing. Id. In short, petitioner raises no material dispute with the facts as summarized above. Thus, applying the Wolff standard, the petition must fail. It is clear that adequate procedural protections were provided, permitting petitioner to present a defense; the DHO, however, did not accept petitioner's defense. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981), cert. denied, 455 U.S. 992 (1982); see also Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984) (an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute). Petitioner has failed to make any such showing sufficient to displace the DHO's findings of fact. Therefore, the

8

court finds that relief should be denied because it is clear that petitioner received adequate due process regarding the alleged disciplinary infraction.[3]

Petitioner's acquittal on February 16, 2005, of the charge under 18 U.S.C. § 111 of assaulting, resisting, or impeding certain officers or employees on August 28, 2004, lends no support to his argument that his due process rights were violated by the discipline imposed subsequent to the DHO report. The charges to which he was subjected at the DHO hearing did not submit petitioner to a conviction of a crime pursuant to the federal criminal code; rather, he was subjected to a prison disciplinary proceeding. Given that a disciplinary proceeding does not subject an inmate to a criminal conviction pursuant to the federal criminal code, and in the absence of any evidence that the BOP intended to adopt the federal criminal code definition of "assault" as controlling in prison disciplinary proceedings, the DHO did not violate petitioner's due process rights by finding that the conduct described above is prohibited as "assaulting any person" and subjects a federal inmate to discipline pursuant to 28 C.F.R. § 541.13, Table 3, code 224 (adding that an inmate is "charged with this act only when a less serious physical injury or contact has been attempted or carried out by an inmate").

## II. USP LEE

---

[3] The court notes that another United States District Court has already reviewed petitioner's receipt of the procedural rights guaranteed by Wolff v. McDonnell. In Boyd v. Driver, et al., Civil Action No. V-06-022 (S.D. Texas, Victoria Div.), petitioner lodged a complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging that he had been subjected to malicious prosecution by the undertaking of the criminal action wherein he was acquitted on February 16, 2005. Boyd v. Driver, et al., was dismissed as frivolous, pursuant to 28 U.S.C. §§ 1915(e) & 1915A. To be sure, petitioner did "not challenge a proceeding within the prison system" in that case. Id., slip op. at 4. Nonetheless, the district court for the Southern District of Texas observed that the record indicated that petitioner "was validly disciplined for the assault for which he was later prosecuted." Id., slip op. at 5. After remarking on the Wolff procedural requirements and the sufficiency of the administrative record, the Court concluded that the record demonstrated "probable cause" to justify the criminal action. Id., slip op. at 5-6.

9

Petitioner presents only the first page of the four-page DHO report regarding the incident at USP Lee on April 1, 2007. The first page indicates that the offense report was prepared on April 1, 2007, and that petitioner was charged with assaulting without serious injury, under offense code 224, and refusing to obey an order, under offense code 307. On April 2, 2007, petitioner received advanced written notice of the charge in the form of a copy of the incident report, and on April 18, 2007, petitioner was advised of his rights by a staff member.

The DHO hearing was held on May 18, 2007. The DHO report indicates that petitioner waived his right to have a staff representative, but one was appointed for him. Petitioner denied that he had committed the offenses with which he was charged. The DHO report provides the following summary of petitioner's statement at the hearing:

> Inmate Boyd acknowledged receipt of a copy of the report and understanding [of] his rights before the DHO. He did not raise any issues or concerns with the discipline process to this point. The DHO read aloud section 11 of the incident report and asked the inmate for his comment. He indicated, "I had my radio on and I didn't hear him calling me. It was all a mis-understanding [sic]. Once he stopped me, I wanted to see the Lieutenant. I don't wanna seem totally innocent. I wish the hole [sic] thing didn't happen."

The DHO found that petitioner had committed the prohibited act of insolence, in violation of offense code 312. Petitioner appealed, arguing that he had not been given advance written notice of a charge under offense code 312 and was therefore "denied the opportunity to call witnesses or present documentary evidence to refute the 312. [sic] Insolence charge." In his view, his due process rights were violated when the DHO "reduce[d] an attempted assault charge . . . to a 312. [sic] Insolence charge. . . ."

On November 26, 2007, the Regional Director for the BOP's Mid-Atlantic Regional Office denied petitioner's appeal, stating, in pertinent part:

10

You appeal the DHO decision of May 18, 2007, for Insolence (Code 312). You contend the DHO's decision was unfair as you claim you were not served sufficient notice to properly defend yourself. You challenge the DHO's authority to amend the initial charges to a finding that you committed a different prohibited act. You request the incident report be expunged.

P.S. 5270.07, Inmate Discipline and Special Housing Units, provides that the DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The DHO found you committed the prohibited act based on the reporting officer's written description of the incident and your admission that you were "guilty" when the investigating lieutenant interviewed you about the incident. Finding that evidence more credible than your latest denial, the DHO based his decision on the greater weight of the evidence. We find the DHO accurately and adequately stated in Section V of the DHO report the specific evidence relied upon to find you committed the prohibited act.

Contrary to your claim, P.S. 5270.07, Inmate Discipline and Special Housing Units, provides that **the DHO is to find the inmate committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report**. **Your** rude and impertinent **behavior was described in the Incident Report**. As such, the DHO's decision is appropriate as **you received written notice of the behavior**. Therefore, your assertion that your due process rights were violated is without merit.

(Emphasis added.)

Petitioner appealed to the final level and, on February 6, 2008, the National Inmate Appeals

Administrator denied the appeal, stating, in relevant part:

Our review reveals substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. This P.S. states that the decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. Accordingly, we find that the DHO detailed in Section V of the DHO report the specific evidence relied upon to support a finding that you committed the prohibited act of Insolence, Code 312, [and] we agree that it is reasonable to make that finding. As noted in your DHO report, the DHO considered your conflicting statements at both your interview with the Investigating Lieutenant and at your UDC hearing. The DHO finds it hard to believe it was all a misunderstanding as you stated. The greater weight of the evidence supports the decision. . . .

11

Petitioner now challenges his disciplinary conviction and loss of good conduct time on the ground that he was found guilty of an offense code with which he was not originally charged in the incident report. Petitioner asserts that he was "denied the opportunity to call witnesses or present a defense because [he] never received notice of a [sic] Insolence charge."

## A. "SIMILAR PROHIBITED ACT"

In the first instance, the petition fails because 28 C.F.R. § 541.17(f)(1), the federal regulation that sets out the BOP's procedures before a discipline hearing officer and provides the operative language for Program Statement 5270.07, explicitly provides that a DHO may find that an inmate "[c]ommitted the prohibited act charged <u>and/or a similar prohibited act</u> if reflected in the incident report." (Emphasis added.) <u>See, also</u> <u>Noesi v. Bledsoe, et al.</u>, Civil Action No. 7:05-cv-00451, slip op. at 12 (W.D. Va. January 20, 2006) (citing 28 C.F.R. § 541.17(f)(1), and adding that the description of the incident in the incident report provides the inmate notice of the potential charges).

## B. DUE PROCESS

Petitioner's due process claim likewise fails. In its discussion of petitioner's challenge to discipline imposed at Three Rivers, the court has already explained the procedural protections set out in <u>Wolff v. McDonnell</u>, 418 U.S. at 564-71. Petitioner's argument does not suggest that the DHO failed to satisfy the guarantees mandated by <u>Wolff</u>, and petitioner's own submissions indicate that he received advanced written notice of the claimed violation, disclosure of the evidence against him, and a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. <u>Id.</u> Petitioner does not express any challenge to the neutrality or detachment of the hearing body, nor does he allege that he was not allowed to cross-examine witnesses at the hearing. <u>Id.</u> Significantly, his own submissions indicate that he was permitted to

12

make a statement at the disciplinary hearing, and he admits that he received advanced written notice of the conduct with which he was charged. Id. In short, petitioner raises no material dispute with the facts as summarized above.

Applying the Wolff standard, the petition must fail. The court observes that petitioner does not allege that the incident report failed to provide a factual description of the basis for the disciplinary charges. Given that the facts of the incident and the conduct described in the offense report remained unchanged, regardless of the title of the charge, petitioner fails to show that receiving notice of the offense code for which he was charged, yet subsequently being found guilty of another charge, affected in any way his ability or his due process right to present a proper defense at the disciplinary hearing regarding the specific conduct at issue. See Smith v. Bureau of Prisons, et al., Civil Action No. 7:03-cv-00662, slip op. at 9-10 (W.D. Va. September 7, 2004) (concluding that the Wolff notice requirements had been met, regardless of belated delivery of the incident report to the inmate and alleged factual errors in the report, because the description of the incident in the incident report provided the inmate notice of the potential charges).

Moreover, petitioner does not dispute that he engaged in the conduct that led first to the initial charge under offense codes 224 and 307 and then, after a disciplinary hearing with all the requisite due process, to the finding of guilt under offense code 312. Petitioner's acts were the basis of the disciplinary charges, and it is clear that petitioner received adequate procedural process regarding the alleged disciplinary infraction. Adequate procedural protections were provided, permitting petitioner to present a defense; the DHO, however, did not accept petitioner's defense. As the court has already explained, supra, federal courts will not review the accuracy of a disciplinary committee's finding of fact, such findings will only be disturbed if they are unsupported

13

by any evidence or are wholly arbitrary and capricious, and an agency's decision will not be second-guessed by a federal court unless it is arbitrary, capricious, or manifestly contrary to the statute. Petitioner has failed to make any such showing sufficient to displace the DHO's findings of fact. Therefore, the court finds that relief should be denied because it is clear that petitioner received adequate due process regarding the alleged disciplinary infraction.

### III. CONCLUSION

Based on the foregoing, the court finds that petitioner's claims lack sufficient merit to warrant the requested relief. Accordingly, the court will dismiss the petition. An appropriate order will be entered this day.

**ENTER**: This ___13ᵗʰ___ day of May, 2008.

_____
United States District Judge

14